**L. N. LUNDSTROM, Respondent,**

v.

**S. R. NAVICKAS, Appellant.**

**S. R. NAVICKAS, Appellant,**

v.

**L. N. LUNDSTROM, Respondent.**

No. 50251.

Supreme Court of Minnesota.

July 3, 1980.

Donald D. Smith, Minneapolis, for appellant.

J. Robert Nygren, Minneapolis, for respondent.

Heard before SHERAN, C. J., YETKA and WAHL, JJ., and considered and decided by the court en banc.

YETKA, Justice.

This case concerns the dissolution of a partnership wherein Lundstrom, the managing partner, exercised his option to purchase the interest of Navickas, the nonmanaging partner, and continue the business. On January 4, 1979, the parties entered into a stipulation that Lundstrom owed Navickas at least $260,000, which amount would be paid on January 9, 1979. The parties also stipulated that the following issues remained unresolved and would be submitted to a district court judge for resolution:

"(a) Real estate taxes on Partnership real estate for 1977, payable in 1978 in the amount of $12,756.00.

(b) The amount of the management fee due L. N. Lundstrom for the management of the 333 Oak Grove property for the period 1971 to March 31, 1977.

(c) Whether Navickas is entitled to interest or other recompense on the sum payable by Lundstrom to Navickas for Navickas' interest in the Partnership, under the Partnership Agreement, Partnership Statutes, common law, and/or equitable principles."

On April 11, 1979, the Hennepin County District Court found that $4,465.99 of the disputed $12,756 in real estate taxes was not a partnership liability. The trial court also found that the $29,898.29 accrued on the partnership books as management fees was a partnership liability. The court granted Navickas interest on the $260,000 at a rate of 6% from September 15, 1977, through November 30, 1978, in the amount of $18,850.

On May 18, 1979, the court amended its findings to award Navickas one-half of the $4,465.99 found not to be a partnership liability, but otherwise denied cross-motions made by the parties. Both parties filed timely appeals from this order and the consequent judgment entered on June 14, 1979. We affirm.

L. N. Lundstrom and S. R. Navickas formed a partnership in 1966 for the pur-

pose of constructing, maintaining and operating an apartment building at 333 Oak Grove in Minneapolis. The parties executed a partnership agreement dated January 31, 1966.

In 1970 the partnership purchased the Copa Cabana Tropic Apartments at 1725 North Lilac Drive in Golden Valley. An amended partnership agreement dated July 20, 1970, was executed by the partners. At all times since the beginning of the partnership, Lundstrom has managed the buildings while Navickas has been the non-active partner.

On March 18, 1977, Navickas notified Lundstrom by letter that he wanted to withdraw from the partnership. Lundstrom notified Navickas by a letter dated March 30, 1977, that he intended to exercise his option to purchase Navickas' interest in the partnership. The parties agreed that March 31, 1977, would be the effective date of the dissolution of the partnership.

Each partner selected an appraiser, who then selected a third appraiser. The three appraisers agreed that the value of Oak Grove was $680,000 and the value of Lilac Drive was $475,000. Lundstrom then provided Navickas with a list of claimed partnership liabilities. The value of Navickas' share was to be derived by subtracting the partnership liabilities as of March 31, 1977, from the appraised value and dividing the remaining balance in half.

As previously mentioned, Navickas contested only two types of partnership liabilities and raised the issue of whether he was entitled to interest on his share. These three issues were raised before the trial court and are raised again on appeal.

Navickas first asks to be relieved from the terms of the stipulation that he entered into prior to trial regarding real estate taxes; he alleges fraud or mistake. He also seeks to reverse the trial court's finding that management fees due Lundstrom and accrued on the partnership books are partnership liabilities and claims that the trial court erred in not allowing interest over a longer period of time on the sum ultimately due him. Lundstrom complains, however,

that since Navickas was responsible for delays in closing, no interest should be payable to him at all.

█ We do not deem it necessary to repeat all the facts to affirm the trial court. We believe it sufficient to say that both men are sophisticated businessmen who had been in partnership for over a decade. We believe the trial court was correct in finding that there was no fraud or mistake when the parties entered into the stipulation, and the trial court's analysis and apportionment of taxes between the partnership and the parties was a fair and equitable one. The management fees were listed in annual partnership returns for a number of years. To allow one partner to object now to their inclusion as partnership expenses when each party had filed individual income tax returns using as his share of the income those amounts indicated in the partnership returns would be inequitable. We believe the partnership returns themselves are the best proof of intent.

█ In the case of interest, the applicable statute provides that a retiring partner shall receive the value of his share as of the date of dissolution with interest unless otherwise agreed. Minn.Stat. § 323.41 (1978). The partnership agreement under which the parties operated provides that in the event of dissolution, an accounting shall be prepared in the first 60 days. Arbitration shall take place if no agreement can be reached as to value in the next 45 days and closing shall then be held within another 60 days from the date a valuation is set—a total maximum period of 165 days. Because the agreement did not contemplate interest during this 165-day period, the trial court awarded none during that time. The court did allow interest from and after the 165-day period through and until November 30, 1978, though Navickas was not paid until after January 1, 1979. The trial court reasoned that Navickas was responsible for delaying closing after November 30, 1978, and thus was not entitled to interest. The evidence supports the inference that Navickas wanted to gain an income tax advan-

tage by delaying closing until after the first of the year.

We believe the trial court acted reasonably on the interest question as well as the two previous ones. The trial court is thus affirmed in all respects.

Affirmed.